### KIRKLAND *ET AL.* v. SOUTHERN RY. CO. *ET AL.*

#### (121 S. E., 595)

1. MASTER AND SERVANT—TESTIMONY AS TO DISTANCE BETWEEN ANOTHER CAR AND POST KNOCKING TRAINMAN OFF HELD ADMISSIBLE.— In an action for the death of a conductor knocked off of a box car by a post, testimony as to the distance between the post and another car as measured by a witness *held* admissible to show negligence in erecting post so as to strike person on a car likely to be used.

2. MASTER AND SERVANT—TESTIMONY AS TO SIMILAR CONDITIONS HELD INADMISSIBLE TO SHOW ASSUMPTION OF RISK.—In an action for the death of a conductor knocked off a box car by a post near the track, testimony as to a post that defendant was using at the other terminus of decedent's run *held* not admissible to show assumption of risk, as other conditions might have rendered the post harmless.

3. DEATH—EVIDENCE BENEFICIARY WAS PREPARING TO GO TO COLLEGE HELD ADMISSIBLE.—In a death action, evidence that decedent's daughter was preparing to go to college *held* admissible, as earning capacity is affected by education.

4. MASTER AND SERVANT—ASSUMPTION OF RISK AND CONTRIBUTORY NEGLIGENCE OF TRAINMAN KILLED BY POST HELD FOR JURY.—In an action for the death of a conductor knocked off a box car by a post near the track, evidence *held* not to require the direction of a verdict on the ground that conductor died as a result of his own negligence and that he assumed the risk.

---

Note: On question of contributory negligence in failing to remember dangerous conditions, see note in 41 L. R. A. (N. S.), 79.

5. MASTER AND SERVANT—ASSUMPTION OF RISK AFFIRMATIVE DEFENSE.
—Assumption. of risk is an affirmative defense and must be proved
by the master.

6. MASTER AND SERVANT—INSTRUCTION ON ASSUMPTION OF RISK HELD
SUFFICIENTLY LIMITED.—An instruction that an employee does not
assume a risk until he becomes aware of the defect or disrepair and
of the risk arising from it, unless the defect and risk are so obvious
that an ordinary prudent person under the circumstances would
have observed and appreciated them, *held* sufficiently limited.

7. APPEAL AND ERROR—ORDER OF CHARGING HELD NOT PREJUDICIAL.—
Where the trial Judge correctly charged the law, the order of charg-
ing *held* not prejudicial.

8. DEATH—WEIGHT OF EVIDENCE AS TO CONSCIOUS SUFFERING FOR JURY.
—Where there was evidence as to conscious suffering, its weight
was for the jury.

Before NELSON, J., Sumter, Spring Term, 1922.    Af-
firmed.

Action by Margaret E. Kirkland and another as execu-
tor of J. F. Kirkland, deceased, against the Southern Rail-
way Co., and another.    Judgment for plaintiffs and the
named defendant appeals.

*Messrs. Frank G. Tompkins* and *Lee & Moise,* for ap-
pellant, cite:  *Usages and customs of railroads to show
negligence:*  20 R. C. L., 27; 189 U. S., 46; 107 U. S.,
454; 98 S. C., 125.  *Damages sustained by beneficiaries:*
227 U. S., 59-70.  *Federal Employers Liability Act:*  241
U. S., 331; 238 U. S., 507.  *Assumption of risk:*  233
U. S., 503; 110 S. C., 153; 241 U. S., 228; 254 U. S., 415;
Ad. Opinion U. S. S. C., 68 L. Ed., 1; 122 U. S., 30 L.
Ed., 1114.  *Contributory negligence:*  96 S. C., 228; 82
S. C., 542; 85 S. C., 471; 89 S. C., 927; 90 S. C., 42; 89
S. C., 15; 230 Fed., 88; 240 U. S., 444; 240 U. S., 66;
109 U. S., 478; 152 U. S., 145; Elliott on Rwys., 1282;
Labatt on Master & Servant 365; 239 U. S., 463.

*Messrs. Epps & Levy,* for respondent, cite:  *Evidence
incompetent to show defendant's custom on charge of
negligence:*  25 S. C., 24.  *Contradiction of witness:*  86

S. C., 503. *Failure to grant nonsuit no ground for exception:* 81 S. C., 466; 63 S. C., 539. *Right of action:* Richey Fed. Emp. Liab., 196; 115 S. C., 115.

February 7, 1924.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

J. F. Kirkland was a conductor for the Southern Railway. His run was from Sumter to Kingville and return. One evening the agents and servants of the defendant put up a post about 11 feet high, between the main line track and a side track, in the Sumter yard. While the post was being put up, one of the men engaged in putting up the post asked the man in charge of the work if he did not think the space was too narrow, and that it was so close that a man might be knocked off a passing train. The man in charge of the work said that he was directed to put it just there and he was going to obey orders, or words to that effect. The post was put up to support a pipe to be used in supplying water to the engines. Mr. Kirkland saw the post and, finding that the pipe was leaking, undertook to shut off the water and is said to have complained that it was a death trap. The danger of which he complained was that it would cause an accumulation of water on the ground. When Mr. Kirkland was superintending the shifting of cars on the morning after the erection of the post, he got up on a box car, on the side of the car, and when he came to the post he was knocked off of the car by the post, and died about two hours later. This action was brought by his executors and was tried under the Federal Employers' Liability Act (U. S. Comp. St. §§ 8657-8665).

The defendant denied negligence and pleaded assumption of risk, contributory negligence, and that the deceased was killed by his own negligence. The jury found a verdict for the plaintiffs for $35,000, which was reduced by the presiding Judge to $25,000. The defendant moved for a direc-

tion of verdict in its favor, but it was refused. From the judgment entered upon this reduced verdict the defendant appealed.

I. The first assignment of error is that his Honor allowed a witness for the plaintiff to state the width of a car which the witness measured, and what was the distance from the post. The car measured was not the car upon which the deceased was riding when he was struck. If there had been a question as to whether the deceased had been struck, or could have been struck, by the post, then the car that was used should have been measured. There was no question but that the post struck the deceased and caused his death. The question was negligence and the jury could have inferred negligence from placing the post so as to strike a person riding on any car that the defendant was likely to use. The measurement of any car which the defendant was using tended to prove negligence. This assignment of error cannot be sustained.

II. The next assignment of error is that the presiding Judge refused to allow a witness for the defendant to testify as to the post that the defendant was using at Kingville, the other terminus of the run of the deceased. There was no error here. The location of the post at Kingville may have been negligence, and two wrongs do not make a right. It did not tend to prove assumption of risk at Sumter, as other conditions at Kingville may have rendered that post harmless.

III. The next assignment of error is that the presiding Judge allowed one of the beneficiaries, a daughter, to state that she was preparing to go to college to affect her pecuniary loss. It is too well known that the earning capacity is affected by education, to require further consideration. This point cannot be sustained.

IV. Appellant states his next assignment of error as follows:

"Exceptions VIII and IX. These exceptions com-

plain that the presiding Judge was in error in failing to direct a verdict on the ground that the plaintiff's intestate died as a result of his own negligence, and that he assumed the risks which were complained of as being incidental to his death. They will -be argued together, in view of the fact that so much of the argument with reference to them is equally applicable to both."

A verdict could not have been directed. The duty to furnish a reasonably safe place to work was an unassignable duty of the master. The man in charge of the erection of the post was warned that the accident that did happen was likely to happen. In spite of the warning, the post was put in dangerous proximity to the passing cars. To put it mildly, the jury might have inferred negligence from that fact. But it is said that the deceased knew that it was dangerous, and therefore assumed the risk. The servant does assume the risk that he knows, or by the exercise of ordinary care would have known. Assumption of risk is an affirmative defense and must be proven by the master. The master proved that the danger that the deceased feared arose from the water on the ground and not the proximity of the post to the car. If the deceased had followed the car, walking on the ground, and had slipped on the wet ground, then appellant's point may have been well taken; but that is not the case. The deceased attempted to ride across the wet place of apprehended danger and ran into another danger, of which he knew nothing—so far as the record shows. Still the appellant says he ought to have known of the danger. Why? The appellant's witness, the engineer, who was an experienced railroad man, said: "The post looked safe." His Honor could not say, as a matter of law, that the danger was manifest, when the appellant's witness said, "the post looked safe."

The case of *Ry. Co. v. Horton,* 233 U. S., 504; 34 Sup. Ct., 635; 58 L. Ed., 1062; L. R. A., 1915C; 1, Ann. Cas.

1915B, 475, cited by the appellant, does, not sustain its case. There we read:

" 'Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike, are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this Court.' "

The case of *Kelly v. Keystone Lumber Co.*, 107 S. C., 99; 91 S. E., 978, shows that the servant assumes not all the dangers from defective conditions, but the danger that arises from the defect of which he knows. He must guard himself against the dangers he knows, at his peril. Here the danger the deceased apprehended was on the ground and not on the car.

V. Appellant's next assignment of error is:

6    "Exception XI. This exception claims error on the part of the presiding Judge with reference to assumption of risk, in that he did not limit the same by stating that if a person of ordinary prudence would have observed and appreciated the dangers of the situation, the plaintiff must have been held to have assumed the risk. This, undoubtedly, should have been charged. It is a correct principle of law, as set out in the cases cited *supra* on the question of assumption of risk, and it denied to the defendant a very important principle."

His Honor charged:

" 'These risks and dangers, the employee or workman is not treated as assuming, until he becomes aware of the defect or disrepair, and also of the risk arising from it, unless such defect and risk are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them.' I charge you that; I have practically charged it already."

This assignment of error cannot be sustained.

VI. The next assignment of error is:

"Exception XII. This exception claims error on the part of the presiding Judge in that his charge eliminated, in his statement of the law as to circumstances under which the plaintiff might recover, the fact that they could not recover if the injury was the result of intestate's sole negligence. It is true that the presiding Judge did charge this principle of law at other places, but at the same time, this was the last thing he said to the jury before reading the requests of the plaintiff, and it was calculated to mislead the jury as to the issues, and undoubtedly made more profound impression upon them than any other part of the charge."

It is admitted that his Honor correctly charged the law. The order of charging here was not prejudicial.

VII. The last assignment of error is that there was no testimony from which the jury could have inferred that the deceased was conscious of any suffering. There was evidence of conscious suffering. Its weight was for the jury.

The judgment appealed from is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.